PER CURIAM.
 

 Steven Richard Taylor appeals the denial of his amended motion for posteonviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Through his postconviction motion, Taylor challenges his capital murder conviction and sentence of death. Taylor has also filed a petition for writ of habeas corpus, through which he alleges ineffective assistance of appellate counsel due to counsel’s failure to raise several issues on direct appeal. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const. For the reasons discussed below, we affirm the trial court’s denial of his rule 3.850 motion and deny relief on his petition for writ of habeas corpus.
 

 FACTS AND PROCEDURAL HISTORY
 

 Taylor is an inmate under sentence of death. Through our prior opinion addressing Taylor’s direct appeal, we have detailed the facts and procedural background surrounding the offense.
 
 See Taylor v. State,
 
 630 So.2d 1038, 1039-41 (Fla.1993).
 

 The case currently under review is Taylor’s first postconviction proceeding before this Court. On November 1, 1995, Taylor filed a “shell” motion to vacate his judgment of conviction and sentence. Amendments to the initial motion were filed on June 23, 2003, and May 13, 2004. The final amended motion for postconviction relief was filed on May 23, 2005. In his final amended motion, Taylor raised twenty-one claims.
 
 [1]
 
 The postconviction court held a
 
 Huff
 

 [2]
 

 hearing on December 13,
 
 *1107
 
 2005, and on June 21, 2006. The postcon-viction court issued an order granting an evidentiary hearing on a limited number of those claims, which was held on August 6 and August 7, 2007.
 

 During the evidentiary hearing, the defense presented the testimony of (1) the current State Attorney for the Fourth Judicial Circuit who served as lead prosecutor at the initial trial; (2) an assistant state attorney who served as counsel at the initial trial and was serving as lead counsel in postconviction litigation; (3) Taylor’s counsel during the initial trial; (4) the second chair counsel for Taylor at the initial trial; (5) Taylor’s first postconviction attorney; (6) a police officer who testified at the initial trial; (7) an office employee of the Duval County Clerk of Courts who processed evidence at the time of the initial trial; (8) Shirley Zeigler (a former Florida Department of Law Enforcement (FDLE) DNA analyst); (9) Dr. Randell Libby (DNA expert); and (10) Timothy Cowart (Taylor’s former cellmate, who testified against Taylor at the initial trial). The State presented Dr. James Pollock (the DNA expert who testified for the State at the initial trial) and also the assistant state attorney who was initially presented by Taylor.
 

 To challenge the DNA evidence presented against Taylor at trial, the defense presented Dr. Libby to address alleged problems associated with Dr. Pollock’s State testing procedures. Dr. Libby testified that the FBI DNA testing protocol utilizes five to eight probes, but Dr. Pollock’s State testing only utilized four. Further, Dr. Libby opined that three of the four probes utilized by Dr. Pollock were inconclusive. One reason Dr. Libby used as a predicate for concluding that the probes were inconclusive was due to differences in the calculated lengths reports created by Dr. Pollock and Shirley Zeigler. The defense also presented Shirley Zeigler, who worked as a Florida Department of Law Enforcement (FDLE) analyst at the time the DNA evidence was processed. Zeigler’s initials were found on the calculated fragment report that was used by Dr. Pollock at Taylor’s initial trial. Zeigler testified that she would have found two of the probes utilized by Dr. Pollock to be inconclusive, but did not disagree with Dr. Pollock’s ultimate findings.
 

 Of additional note, during the evidentia-ry hearing, a police officer noted that, at trial, he testified that one of the exhibits collected from the scene represented a white blouse. On cross-examination, however, the officer indicated that he did not remember the specific color of the blouse he collected on the day he completed his report. Further, Timothy Cowart was also presented as a witness at the eviden-tiary hearing to recant some of his testimony that he had previously presented during the initial trial.
 

 On October 5, 2007, the State filed a Motion to Strike and Objection to Defendant’s Written Closing Argument and Memorandum of Law. Taylor filed his Response to the State’s Motion with an accompanying Motion to Amend the Pleadings to Conform with the Evidence. On June 22, 2009, the postconviction court denied Taylor’s rule 3.850 motion. On June 26, 2009, the postconviction court filed an order granting the State’s motion to strike and denying Taylor’s motion to amend. This appeal followed.
 

 ANALYSIS
 

 Motion to Amend
 

 Taylor first asserts that the trial court erred in granting the State’s motion to strike and denying his motion to amend. In his final amended motion for postcon-viction relief, Taylor raised a number of
 
 *1108
 
 challenges with regard to the DNA evidence presented against him at trial. After the postconviction evidentiary hearing, Taylor filed a closing memorandum in the trial court, which also asserted a number of challenges to the DNA evidence presented at trial. The State subsequently filed a motion to strike portions of Taylor’s closing memorandum that were allegedly not covered in his postconviction motion. The trial court did not rule on the State’s motion to strike until after it entered its order denying postconviction relief. In a two page Order on Pending Motions, the trial court simply held: “Based upon the pleadings and consistent with the Court’s Order Denying Defendant’s Motion for Post Conviction relief ... [t]he State’s Motion to Strike and Objection to Defendant’s Written Closing Argument and Memorandum of Law is GRANTED .... [and] [t]he Defendant’s Motion to Amend the Pleadings to Conform with the Evidence is DENIED.”
 

 In his first claim on appeal, Taylor asserts that his closing memorandum did not raise any new claims, but even if it did, the trial court abused its discretion by failing to adhere to Florida Rule of Criminal Procedure 3.850 and Florida Rule of Civil Procedure 1.190(b). First, we must determine whether Taylor’s amended motion for postconviction relief is governed by Florida Rule of Criminal Procedure 3.850 or 3.851. The question of which rules of procedure are applicable is a question of law that is reviewed de novo.
 
 See GTC, Inc. v. Edgar,
 
 967 So.2d 781, 785 (Fla.2007) (“Generally speaking, statutory interpretation is a question of law subject to de novo review.”) (citing
 
 BellSouth Telecomm., Inc. v. Meeks,
 
 863 Sq.2d 287, 289 (Fla.2003)).
 

 Rule 3.851(a) provides:
 

 This rule shall apply to all motions and petitions for any type of postconviction or collateral relief brought by a prisoner in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all postconviction motions filed on or after October 1, 2001, by prisoners who are under sentence of death.
 
 Motions pending on that date are governed by the version of this rule in effect immediately prior to that date.
 

 (Emphasis supplied.) Taylor’s initial motion to vacate judgment and sentence, which was a “shell motion,” was filed on November 1, 1995. That motion was still pending on October 1, 2001, and is thus governed by “the version of this rule in effect immediately prior to that date,” which, here, is rule 3.850. Fla. R.Crim. P. 3.851(a).
 

 Further, the applicability of rule 3.850 is consistent with this Court’s decision in
 
 Gore v. State,
 
 964 So.2d 1257 (Fla.2007). In that case, Gore’s initial postconviction motion was filed pursuant to rule 3.850 on September 28,1999, but his amended post-conviction motion was filed on January 7, 2002, after amendment of the rules.
 
 See Gore,
 
 964 So.2d at 1261 n. 1. This Court held that rule 3.850, not rule 3.851, applied.
 
 See id.
 
 at 1261. Here the initial motion for postconviction relief was filed prior to the enactment of rule 3.851, and an amended motion was filed after that date. Taylor’s amended motion for postconviction relief is therefore governed by rule 3.850, not rule 3.851 as held in
 
 Gore.
 

 Rule 3.850, however, is silent with regard to amendments to postconviction motions. Taylor asserts that Florida Rule of Civil Procedure 1.190 is applicable here because in
 
 Allen v. Butterworth,
 
 756 So.2d 52 (Fla.2000), this Court acknowledged that postconviction cases are quasi-civil in nature. Taylor’s argument, however, completely disregards this Court’s decision in
 
 *1109
 

 Huff v. State,
 
 762 So.2d 476 (Fla.2000). In
 
 Huff,
 
 this Court explicitly stated that “[t]he standard of review for a trial court’s determination regarding a motion to amend a rule 3.850 motion is whether there was an abuse of discretion.” 762 So.2d at 481 (citing
 
 McConn v. State,
 
 708 So.2d 308, 310 (Fla. 2d DCA 1998)). Accordingly, because Taylor’s motion for postconviction relief is governed by rule 3.850, this Court only reviews the denial of Taylor’s motion to amend for an abuse of discretion.
 
 See Walton v. State,
 
 3 So.3d 1000, 1012 (Fla.2009) (citing
 
 Huff v. State,
 
 762 So.2d 476, 481 (Fla.2000)).
 

 Here, the trial court did not abuse its discretion in denying Taylor’s motion to amend. The arguments asserted by Taylor in his closing memorandum to the trial court were merely refinements and expansions upon arguments that had already been raised in his amended motion for postconviction relief. The trial court meticulously analyzed each of Taylor’s challenges to the DNA evidence, even as articulated by Taylor in his closing memorandum. The trial court actually addressed each of Taylor’s claims as they would have appeared in his amended motion, and therefore, we need not reach the issue of whether the trial court’s denial of Taylor’s motion to amend was an abuse of discretion. Accordingly, we deny relief on this claim.
 

 Ineffective Assistance of Counsel
 

 Standard of Review
 

 In
 
 Pagan v. State,
 
 29 So.3d 938, 948-49 (Fla.2009), this Court provided the appropriate standard of review for ineffective assistance of counsel claims:
 

 Following the United States Supreme Court’s decision in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted). Where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument.
 
 See Heath v. State,
 
 3 So.3d 1017, 1033 (Fla.2009).
 

 Because both prongs of the
 
 Strickland
 
 test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence, but reviewing the trial court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 There is a strong presumption that trial counsel’s performance was not ineffective.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at
 
 *1110
 
 the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.”
 
 Id.
 
 In
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000), this Court held that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 

 With respect to the investigation and presentation of mitigation evidence, the Supreme Court observed in
 
 Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), that
 
 “Strickland
 
 does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does
 
 Strickland
 
 require defense counsel to present mitigating evidence at sentencing in every case.”
 
 Id.
 
 at 533, 123 S.Ct. 2527. Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel’s decision not to introduce certain mitigation evidence was itself reasonable.
 
 Id.
 
 at 523,123 S.Ct. 2527;
 
 Strickland,
 
 466 U.S. at 690-91, 104 S.Ct. 2052. When making this assessment, “a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.”
 
 Wiggins,
 
 539 U.S. at 527, 123 S.Ct. 2527.
 

 An attorney can almost always be second-guessed for not doing more. However, this is not the standard by which counsel’s performance is to be evaluated under
 
 Strickland.
 
 Deficient performance involves “particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.”
 
 Maxwell,
 
 490 So.2d at 932.
 

 DNA Evidence
 

 Taylor asserts that trial counsel was ineffective for (1) failing to request a
 
 Frye
 

 [3]
 

 hearing; (2) failing to object to admission of DNA evidence and to Dr. Pollock’s testimony about DNA; (3) failing to provide any expert testimony to support trial counsel’s attack on the DNA evidence; (4) withdrawing a previously filed motion for continuance; (5) failing to request a
 
 Richardson
 

 [4]
 

 hearing when Zeigler’s name was revealed for the first time at trial; (6) failing to develop the theory of a second blouse; and (7) failing to object to improper prosecutorial comments. As further discussed below, we conclude that Taylor has failed to satisfy his burden to demonstrate ineffectiveness for any of these claims.
 

 1) Failure to Request a
 
 Frye
 
 Hearing
 

 The postconviction court correctly found that trial counsel was not ineffective for failing to request a
 
 Frye
 
 hearing to challenge DNA evidence. As the postcon-viction court noted in its final order, this Court has held that any refinements or additions to the
 
 Frye
 
 analysis which have evolved since the trial in this case was conducted cannot be retroactively applied
 
 *1111
 
 in evaluating the effectiveness of trial counsel’s performance.
 
 See Armstrong v. State,
 
 862 So.2d 705, 713 (Fla.2003). The bulk of Taylor’s argument relies on case law that developed
 
 after
 
 the conclusion of the trial. This Court has made clear that trial counsel “cannot be held ineffective for failing to anticipate the change in the law.”
 
 Nelms v. State,
 
 596 So.2d 441, 442 (Fla.1992) (citing
 
 Stevens v. State,
 
 552 So.2d 1082, 1085 (Fla.1989)).
 

 We conclude that the decision by trial counsel not to request a
 
 Frye
 
 hearing was reasonable. The only authority presented by Taylor during postconviction that both challenged the use of DNA evidence
 
 and
 
 existed at the time of the trial are academic articles and isolated, nonbinding decisions. While this evidence certainly
 
 could
 
 have been presented at trial, it was not essential for counsel to be determined to be effective. Further, none of the authority referred to by Taylor was binding on the trial court. Trial counsel’s omission of the specific authority referred to by Taylor on postconviction was reasonable and cannot be considered “outside the broad range of reasonably competent performance under prevailing professional standards.”
 
 Pagan,
 
 29 So.3d at 948 (quoting
 
 Maxwell,
 
 490 So.2d at 932). Taylor therefore fails under the deficiency prong, and it is not necessary for us to address the prejudice prong of
 
 Strickland
 
 for this claim.
 
 See Reaves v. State,
 
 826 So.2d 932, 939 n. 10 (Fla.2002) (quoting
 
 Strickland,
 
 466 U.S. at 697, 104 S.Ct. 2052 (“[Tjhere is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.”)).
 

 2) Failure to Object to Admission of DNA Evidence and Failure to Object to Dr. Pollock’s Testimony About DNA
 

 Taylor asserts that trial counsel was ineffective for failing to raise specific objections with regard to both the DNA evidence generally and Dr. Pollock’s testimony. A review of the final order of the postconviction court reveals that the trial court articulated specific instances where trial counsel did challenge the DNA evidence. Further, although trial counsel did not present a DNA expert at trial who had been hired to assist the defense as a witness, trial counsel did testify that he had multiple conversations with the expert and was prepared to address the DNA evidence at trial. Counsel stated, “My feeling and my level of comfort after talking about this with [the DNA expert] was very good.” Here, a review of the record and the final order of the postconviction court reveals that trial counsel’s alleged failure to object with regard to the DNA evidence, especially when viewed in unison with the vigorous cross-examine of Dr. Pollock, was reasonable. Trial counsel’s failure to make specific objections appears to be the product of an overall strategy, and therefore his allegation of omission of certain specific objections does not amount to deficient performance.
 
 See Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000) (“[Sjtrategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”). Taylor fails to satisfy the deficiency prong of
 
 Strickland,
 
 and, therefore, we need not address the prejudice prong of
 
 Strickland
 
 for this claim.
 
 See Reaves,
 
 826 So.2d at 939.
 

 3) Failure to provide any expert testimony to support trial counsel’s attack on the DNA evidence
 

 Taylor asserts that trial counsel was ineffective for failing to present the defense’s DNA expert to testify at trial.
 
 *1112
 
 At the evidentiary hearing, when asked why he had not presented the defense expert as a witness, trial counsel responded that he was comfortable in cross-examining Dr. Pollock. Trial counsel therefore made a strategic decision
 
 not
 
 to call the expert. As noted above, conduct that appears to be the product of an overall strategy will not satisfy the deficiency prong of
 
 Strickland. See Occhicone v. State,
 
 768 So.2d at 1048.
 

 4) Withdrawing motion for continuance
 

 Taylor next asserts that trial counsel was ineffective for withdrawing his motion for continuance days before trial, even though the motion indicated that his DNA expert had not completed his review of the records. In response to inquiring as to why he did not pursue the continuance, defense trial counsel responded that his DNA expert informed him prior to trial that in the expert’s opinion, the DNA testing was properly completed and that he did not have any major complaints with the DNA testing or DNA evidence. Trial counsel therefore appeared to make a strategic decision not to proceed further with the motion for a continuance because the expert’s testimony would have been detrimental to the defense, and his withdrawal of the motion does not constitute deficient performance as required by
 
 Strickland. See Occhicone,
 
 768 So.2d at 1048.
 

 5) Failure to request
 
 Richardson
 
 hearing when Zeigler’s name was revealed at trial
 

 Taylor asserts that trial counsel was ineffective for failing to request a
 
 Richardson
 
 hearing when Zeigler’s name was revealed for the first time at trial. First, Taylor fails to establish any deficient performance stemming from trial counsel’s failure to request a
 
 Richardson
 
 hearing. As articulated by this Court in
 
 Sinclair v. State,
 
 657 So.2d 1138, 1140 (Fla.1995):
 

 [W]hen the State violates a discovery rule, the trial court has discretion to determine whether the violation resulted in harm or prejudice to the defendant, but this discretion can be properly exercised only after adequate inquiry into all the surrounding circumstances.
 
 State v. Hall,
 
 509 So.2d 1093 (Fla.1987). In making such an inquiry, the trial judge must first determine whether a discovery violation occurred. If a violation is found,
 
 the court must assess whether the State’s discovery violation was inadvertent or willful,
 
 whether the violation was trivial or substantial, and most importantly, what affect it had on the defendant’s ability to prepare for trial.
 

 (Emphasis supplied.) Here, the State had provided defense trial counsel with the calculated fragment report upon which Zeigler’s initials appeared. Trial counsel was therefore aware of Zeigler’s existence, and although trial counsel may not have known Zeigler’s full name, the State certainly did not inadvertently or willfully conceal her identity. Trial counsel, therefore, cannot be said to have been deficient in failing to request a
 
 Richardson
 
 hearing when such a hearing was not appropriate under the circumstances.
 

 Even if trial counsel’s failure did amount to deficient performance, Taylor has failed to establish any prejudice. The record reveals that although Zeigler testified during postconviction proceedings that there were differences between her report and that of Dr. Pollock, she did not disagree with Dr. Pollock’s ultimate findings. Accordingly, any potential error in failing to request a
 
 Richardson
 
 hearing was harmless. Taylor therefore fails to meet his burden under the prejudice prong of
 
 Strickland.
 
 Taylor has failed to establish either of the two prongs required by
 
 *1113
 

 Strickland,
 
 so relief is not warranted for this claim.
 

 6) Blouse
 

 Taylor next asserts that that the trial court erred in denying relief on his claim that trial counsel was ineffective for failing to develop the theory of a second, white blouse. This claim is based upon an officer testifying at trial that he handled a white blouse, as opposed to the green blouse that was involved with the underlying murder. The crux of Taylor’s ineffective assistance of counsel claim, therefore, hinges on the existence of a phantom white blouse. The trial court clearly examined the record, processed the evidence revealed during the evidentiary hearing, and made a
 
 factual
 
 determination that “it was the green blouse that the witnesses were referring to in their testimony and which was entered into evidence at trial.” This Court will defer to the factual findings of the trial court on this issue as this Court does not substitute its judgment for that of the trial court on questions of the credibility of witnesses and the appropriate weight to be given to the evidence.
 
 See Lowe v. State,
 
 2 So.3d 21, 30 (Fla.2008) (citing
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997)). Competent, substantial evidence exists to support the trial court’s finding that there is not, nor has there ever been, a phantom white blouse. Accordingly, trial counsel cannot be said to have been deficient for failing to develop a theory revolving around the existence of such a blouse, nor can Taylor be said to have been prejudiced if no such blouse existed. This claim is a red herring and does not warrant relief.
 

 7) Improper Prosecutorial Comments
 

 Taylor next challenges trial counsel’s failure to object to the following statement made by the prosecutor during closing arguments:
 

 You will recall that during our opening statements I was somewhat careful not to overstate the evidence because during your opening statements there is, as the court points out, a presumption of innocence. And the presumption of innocence does not leave the defendant
 
 until evidence has been presented that wipes away that presumption. There is no longer a presumption of innocence as evidence has been presented....
 

 The trial court properly relied on this Court’s decision in
 
 Dailey v. State,
 
 965 So.2d 38, 44 (Fla.2007), where we stated: “Regarding the prosecutor’s statements concerning Dailey’s presumption of innocence, we agree with the trial court that
 
 when read in context,
 
 the comments appear to be a statement by the prosecutor of her belief that the State satisfied its burden of proof. Therefore, counsel’s failure to object was not deficient.”
 
 Dailey,
 
 965 So.2d at 44 (emphasis supplied). Here, the prosecutor prefaced his allegedly improper statement with a reiteration that the presumption of innocence exists. Further, the prosecutor stated that the presumption is not removed “until evidence has been presented that wipes away that presumption.” Viewed in context, the comment in question was not improper, and counsel’s failure to object cannot amount to deficient performance.
 
 See Dailey,
 
 965 So.2d at 44.
 

 Further, the finding of the trial court is consistent with this Court’s decision in
 
 Belcher v. State,
 
 961 So.2d 239, 246 (Fla.2007). In that case, the prosecutor, during voir dire, asked: “Do you understand that does not mean he is innocent? It means he is presumed to be innocent until you hear the evidence to the contrary? Can all of you agree with that?” This Court stated: “The transcripts indi
 
 *1114
 
 cate that the prosecutor was merely explaining the presumption of innocence to prospective jurors. In addition, as the lower court concluded, we do not see a proper basis for defense counsel to object.” The comments in
 
 Belcher
 
 are similar to those made by the prosecutor here. “Where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument.”
 
 Pagan,
 
 29 So.3d at 949 (citing
 
 Heath v. State,
 
 3 So.3d 1017, 1033 (Fla.2009)). Accordingly, we deny relief on this claim.
 

 Brady
 
 [5]
 

 and
 
 Giglio
 
 [6]
 

 Claims
 

 Standard of Review
 

 Pursuant to
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State is required to disclose material information within its possession or control that is favorable to the defense.
 
 See Pagan,
 
 29 So.3d at 946. To demonstrate a
 
 Brady
 
 violation, a defendant has the burden to establish (1) that
 
 favorable evidence,
 
 either exculpatory or impeaching, (2) was
 
 willfully
 
 or inadvertently suppressed by the State, and (3) because the evidence was
 
 material,
 
 the defendant was prejudiced.
 
 See Hurst v. State,
 
 18 So.3d 975, 988 (Fla.2009) (citing
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). This Court has explained that “[t]here is no
 
 Brady
 
 violation where the information is equally accessible to the defense and the prosecution, or where the defense ... had the information.”
 
 Provenzano v. State,
 
 616 So.2d 428, 430 (Fla.1993) (citing
 
 Hegwood v. State,
 
 575 So.2d 170, 172 (Fla.1991);
 
 James v. State,
 
 453 So.2d 786, 790 (Fla.1984)). Questions of whether evidence is exculpatory or impeaching and whether the State suppressed evidence are questions of fact, and the trial court’s determinations of such questions will not be disturbed if they are supported by competent, substantial evidence.
 
 See Way v. State,
 
 760 So.2d 903, 911 (Fla.2000). To satisfy the materiality prong of
 
 Brady,
 
 a defendant must prove that there is a “reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.”
 
 Guzman v. State,
 
 868 So.2d 498, 506 (Fla.2003) (quoting
 
 United States v. Bagley,
 
 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (plurality opinion)). In other words, the question is whether “the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.”
 
 Smith v. State,
 
 931 So.2d 790, 796 (Fla.2006) (quoting
 
 Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936).
 

 A claim pursuant to
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), alleges that a prosecutor knowingly presented false testimony against the defendant.
 
 See Green v. State,
 
 975 So.2d 1090, 1106 (Fla.2008). To demonstrate a
 
 Giglio
 
 violation, a defendant must prove that (1) the prosecutor presented or failed to correct false testimony; (2) the prosecutor knew the testimony was false; and (3) the false evidence was material.
 
 See San Martin v. State,
 
 995 So.2d 247, 254 (Fla.2008). If the defendant establishes that a prosecutor has knowingly presented false testimony, the burden then shifts to the State to prove that there is not any reasonable possibility that the false testimony could have affected the judgment of the jury.
 
 See Guzman,
 
 868
 
 *1115
 
 So.2d at 506 (citing
 
 United States v. Agurs,
 
 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). While materiality is a component of both a
 
 Giglio
 
 and
 
 Brady
 
 claim, the
 
 Giglio
 
 standard of materiality is more defense friendly.
 
 See Guzman,
 
 868 So.2d at 507.
 

 For both
 
 Brady
 
 and
 
 Giglio
 
 claims, as with any other postconviction claim, the defendant ultimately carries the burden of establishing a prima facie case based upon a legally valid claim.
 
 See Freeman v. State,
 
 761 So.2d 1055, 1061 (Fla.2000). Mere conclusory allegations are not sufficient to meet this burden.
 
 See id.
 
 (citing
 
 Kennedy v. State,
 
 547 So.2d 912 (Fla.1989)).
 

 DNA Evidence
 

 Taylor asserts that critical documents and witness names were either not provided to the defense or provided late. Those documents and names include: (1) FBI/ FDLE protocols; (2) calculated fragment length reports, summaries, and bench notes; and (3) the name of Shirley Zeigler. For the reasons discussed below, we deny relief on each of these allegations.
 

 1) FBI/FDLE Protocols
 

 Taylor asserts that the FBI/ FDLE protocols, allegedly not provided by the State until postconviction litigation, “established that Dr. Pollock either changed the protocol or violated the protocol in his conclusions.” The only “violation” identified by Taylor, however, is the fact that the FBI protocols utilized five to eight probes, while Dr. Pollock only used four. This “violation,” according to the defense’s expert, undermined the reliability of the DNA evidence.
 

 During the evidentiary hearing, Dr. Pollock acknowledged that he deviated from the FBI protocols. The only evidence presented by Taylor during the evidentiary hearing that directly challenged Dr. Pollock’s ultimate findings, however, was the testimony of Dr. Libby, whom the postcon-viction court explicitly determined to be unreliable. Although the postconviction court did not examine this evidence in the context of a
 
 Brady
 
 or
 
 Giglio
 
 violation, it still assessed the credibility of Dr. Libby with regard to Dr. Pollock’s ultimate findings. The postconviction court considered, and rejected, the relevance of the FBI/ FDLE protocols in the ineffective assistance of counsel context.
 

 This Court will defer to the factual findings of the postconviction court on this issue as this Court does not substitute its judgment for that of the postconviction court on questions of the credibility of witnesses and the appropriate weight to be given to the evidence.
 
 See Lowe v. State,
 
 2 So.3d at 30 (citing
 
 Blanco,
 
 702 So.2d at 1252); Even if we assume that the State inadvertently failed to disclose these protocols, in light of the trial court’s findings of fact, the alleged violations cannot “reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.”
 
 Smith,
 
 931 So.2d at 796 (quoting
 
 Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936) (articulating the materiality prong of
 
 Brady).
 
 Further, there is no reasonable possibility that the allegedly false testimony could have affected the judgment of the jury.
 
 See id.
 
 (articulating the materiality prong of a
 
 Giglio
 
 claim). Accordingly, this subclaim fails under the materiality prongs of both
 
 Brady
 
 and
 
 Gig-lio.
 

 2) Calculated Length Reports, Summaries, and Bench Notes
 

 Taylor asserts that the calculated length reports are material because they establish critical differences in lengths of DNA strands calculated by Dr. Pollock compared to those calculated by Shirley
 
 *1116
 
 Zeigler. In his initial brief to this Court, Taylor acknowledges that “it wasn’t until three days before trial that [the defense’s DNA expert] received the calculated fragment length reports/summaries and bench notes.” Taylor further asserts that trial counsel “was essentially sandbagged into: (1) not calling [the DNA expert] to testify, (2) not having [the DNA expert] present during the trial, (8) withdrawing his Motion for Continuance, (4) being unable to discern what information Shirley Zeigler could supply, and (5) being unable to call her as a witness to impeach Dr. Pollock’s trial testimony.”
 

 First, because Taylor ultimately asserts a discovery violation before trial, this claim should have been raised pursuant to
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971), during trial, not in a postconviction motion pursuant to
 
 Brady.
 
 “Where a defendant fails to timely object to a discovery violation or to request a
 
 Richardson
 
 hearing, the defendant does not preserve the point for appellate review.”
 
 Major v. State,
 
 979 So.2d 243, 244 (Fla. 3d DCA 2007) (citing
 
 Celestine v. State,
 
 717 So.2d 205, 206 (Fla. 5th DCA 1998)). The only cognizable claim here, therefore, is that trial counsel was ineffective for failing to request a
 
 Richardson
 
 hearing on the alleged discovery violation. As discussed in the previous section, this claim is also without merit.
 

 Second, even if this were a cognizable
 
 Brady
 
 claim, the evidence is not material. As discussed above, the only evidence presented by Taylor during the evidentiary hearing that challenged the DNA evidence was the testimony of Dr. Libby and Shirley Zeigler. These two witnesses testified with regard to the potential discrepancies in the calculated fragment length reports. As previously articulated, however, Dr. Libby was found to be not credible by the trial court, and Zeigler did not disagree with the ultimate findings of Dr. Pollock. The alleged violations, therefore, cannot “reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.”
 
 Smith,
 
 931 So.2d at 796 (quoting
 
 Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936) (articulating the materiality prong of Brady). Nor is there any reasonable possibility that the allegedly false testimony could have affected the judgment of the jury.
 
 See id.
 
 (articulating the materiality prong of a
 
 Giglio
 
 claim). Accordingly, this subclaim fails under the materiality prongs of both
 
 Brady
 
 and
 
 Gig-lio.
 

 3) Name of Shirley Zeigler
 

 Finally, Taylor asserts that the State suppressed the name of Shirley Zeigler, which was allegedly only revealed during the cross-examination of Dr. Pollock. Taylor asserts that Zeigler could have called into question Dr, Pollock’s testimony, and had she been called at trial, the defense would have been able to impeach Dr. Pollock’s testimony.
 

 First, because Taylor ultimately asserts a discovery violation that was discovered and known during trial, this claim should have been raised pursuant to
 
 Richardson
 
 at trial, not in a
 
 Brady
 
 claim at the post-conviction stage.
 
 See Major,
 
 979 So.2d at 244 (citing
 
 Celestine,
 
 717 So.2d at 206). The only cognizable claim here, therefore, is that trial counsel was ineffective for failing to request a
 
 Richardson
 
 hearing, which, as previously discussed, is without merit.
 

 Second, this is not a valid
 
 Brady
 
 violation because the State did not suppress the evidence. Taylor admits in his brief that he possessed Zeigler’s initials before trial as they were contained on the calculated fragment reports. Taylor simply accuses the State of failing to identify whom those initials represented. In fact, trial counsel
 
 *1117
 
 was able to specifically identify those initials during the cross-examination of Dr. Pollock. Taylor thus fails to establish that the State suppressed Zeigler’s name when it disclosed her initials through discovery.
 
 See Ferrell v. State,
 
 29 So.3d 959, 980 (Fla.2010) (“Because the evidence at the evidentiary hearing established that Ferrell’s trial counsel was in possession of the information Ferrell alleged had been withheld, this
 
 Brady
 
 claim must fail.”).
 

 Third, even if this were a cognizable
 
 Brady
 
 or
 
 Giglio
 
 claim, the evidence is not material. Zeigler testified that despite her disagreement with certain elements of Dr. Pollock’s testing procedures, she did not ultimately disagree with his findings. Her testimony, therefore, is unlikely to undermine confidence in the outcome.
 
 See Guzman,
 
 868 So.2d at 506 (articulating the materiality prong of a
 
 Brady
 
 claim). Nor is there any reasonable possibility that the false testimony could have affected the judgment of the jury.
 
 See id.
 
 (articulating the materiality prong of a
 
 Giglio
 
 claim). Accordingly, relief is not warranted for this subclaim.
 

 Blouse
 

 Taylor asserts without argument or analysis that the trial court erred in denying relief on his
 
 Brady
 
 and
 
 Giglio
 
 claims related to the blouse. In his amended motion for postconviction relief, along with his initial brief to this Court, Taylor fails to identify a single piece of evidence that was suppressed by the State or any false testimony that was given by a witness. These claims are therefore conclusory and are denied on that basis.
 
 See Freeman,
 
 761 So.2d at 1061 (citing
 
 Kennedy,
 
 547 So.2d 912).
 

 Newly Discovered Evidence
 

 To obtain a new trial based upon newly discovered evidence, a defendant has the burden to establish two things: (1) the evidence was not known by the trial court, the party, or counsel at . the time of trial and the defendant or defense counsel could not have known of it by the use of diligence; and (2) the newly discovered evidence is of such nature that it would probably produce an acquittal on retrial.
 
 See Hurst v. State,
 
 18 So.3d 975, 992 (Fla.2009) (citing
 
 Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998)).
 

 Here, Taylor asserts that the recanted testimony of Timothy Cowart, Taylor’s former cellmate who testified against him during the initial trial, warrants a new trial. This Court has repeatedly held that recantations are “exceedingly unreliable” and that it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true.
 
 See Archer v. State,
 
 934 So.2d 1187, 1196 (Fla.2006) (quoting
 
 Armstrong v. State,
 
 642 So.2d 730, 735 (Fla.1994)). Cowart’s recanted testimony is therefore to be reviewed with extreme skepticism. Further, this Court will defer to the factual findings of the trial court on this issue as this Court does not substitute its judgment for that of the trial court on questions of the credibility of witnesses.
 
 See Lowe,
 
 2 So.3d at 30 (citing
 
 Blanco,
 
 702 So.2d at 1252). Here, the trial court determined that the recanted testimony of Cowart was not credible. In light of the trial court’s factual determination that Cowart’s recanted testimony is not reliable, we deny relief on this claim.
 

 Ineffective Assistance of Appellate Counsel
 

 Standard of Review
 

 Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas corpus.
 
 See Freeman v. State,
 
 761 So.2d 1055, 1069 (Fla.2000). Consistent with the
 
 Strickland
 
 standard, to grant habeas relief
 
 *1118
 
 based on ineffectiveness of appellate counsel, this Court must determine
 

 first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
 

 Pope v. Wainwright,
 
 496 So.2d 798, 800 (Fla.1986);
 
 see also Freeman,
 
 761 So.2d at 1069;
 
 Thompson v. State,
 
 759 So.2d 650, 660 (Fla.2000). In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.”
 
 Freeman,
 
 761 So.2d at 1069;
 
 see also Knight v. State,
 
 394 So.2d 997, 1001 (Fla.1981). Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been presented on direct appeal or in a postconviction motion.
 
 See Rutherford v. Moore,
 
 774 So.2d 637, 643 (Fla.2000). “If a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.”
 
 Id.
 
 (quoting
 
 Williamson v. Dugger,
 
 651 So.2d 84, 86 (Fla.1994)).
 

 Analysis
 

 Taylor asserts that appellate counsel was ineffective for failing to (1) raise a claim of fundamental error when the trial court did not order a
 
 Frye
 
 hearing sua sponte; and (2) argue that the prosecutor’s comment on the presumption of innocence violated a fundamental right. For the reasons discussed below, we deny relief on both of these claims.
 

 1) Failing to request
 
 Frye
 
 hearing sua sponte
 

 This Court has repeatedly held that absent a proper objection from the offended party, it is not an error for a trial court to admit evidence without a
 
 Frye
 
 hearing.
 
 See McDonald v. State,
 
 743 So.2d 501, 506 (Fla.1999) (“McDonald argues the trial court failed to determine the admissibility of the DNA test results and the basis of the statistical comparisons according to the standards enunciated in
 
 Frye
 
 .... Moreover, in the absence of a proper objection, we find no error in the admission of this evidence.”) (citing
 
 Hadden v. State,
 
 690 So.2d 573, 580 (Fla.1997));
 
 Hadden,
 
 690 So.2d at 580 (“Unless the party against whom the evidence is being offered makes this specific objection, the trial court ■will not have committed error in admitting the evidence.”) (citing
 
 Archer v. State,
 
 673 So.2d 17, 21 (Fla.1996)). Accordingly, as a matter of law, the trial court here did not err in failing to conduct a
 
 Frye
 
 hearing sua sponte.
 

 Taylor’s reliance on
 
 Zack v. State,
 
 911 So.2d 1190, 1201 (Fla.2005), is misguided. Nothing in
 
 Zack
 
 supports Taylor’s contention that the trial court should have ordered a
 
 Frye
 
 hearing sua sponte. In fact, the trial court explicitly rejected Zack’s contention that the “the trial court should have conducted a hearing sua sponte.”
 
 Id.
 
 Further,
 
 Zack
 
 is distinguishable because the trial, in that case, occurred in 1997, two years after this Court took judicial notice of the reliability of DNA evidence in
 
 Hayes v. State,
 
 660 So.2d 257 (Fla.1995).
 

 The trial court did not err in failing to order a
 
 Frye
 
 hearing sua sponte. Accordingly, appellate counsel cannot be said to be ineffective for failing to raise this issue on appeal. We therefore deny relief on this claim.
 

 
 *1119
 
 2) Improper prosecutorial comments
 

 Taylor’s petition challenges the same comment addressed in the ineffective assistance of trial counsel claim. As articulated previously, this statement was not improper. Accordingly, appellate counsel cannot be deemed to have been ineffective for failing to raise that issue on appeal.
 
 See Pagan,
 
 29 So.3d at 949 (citing
 
 Heath,
 
 3 So.3d at 1033).
 

 The petition also challenges the following jury instruction:
 

 The defendant has entered his plea of not guilty. This means you must presume or believe that the defendant is innocent. This presumption of innocence stays with the defendant as to each material allegation in the charge and through each stage of the trial until that presumption of innocence has been overcome by the evidence to the exclusion of and beyond a reasonable doubt. Now, to overcome the defendant’s presumption of innocence, the State has the burden of proving the following two elements: Number one, that the crime with which the defendant is charged was in fact committed, and two, that the defendant is the person who committed the crime.
 

 Jury instructions are subject to the contemporaneous objection rule and, absent an objection at trial, can be raised on appeal
 
 only if
 
 fundamental error occurred.
 
 See Walls v. State,
 
 926 So.2d 1156, 1180 (Fla.2006) (quoting
 
 State v. Delva,
 
 575 So.2d 643, 644 (Fla.1991)). With regard to what constitutes fundamental error in a jury instruction, this Court has stated:
 

 We have explained that for jury instructions to constitute fundamental error, the error must “reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Delva,
 
 575 So.2d at 644-45 (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960)). Further, “ ‘fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.’ Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error....”
 
 Id.
 
 at 645 (citation omitted) (quoting
 
 Stewart v. State,
 
 420 So.2d 862, 863 (Fla.1982)).
 

 Garzon v. State,
 
 980 So.2d 1038, 1042 (Fla.2008).
 

 Here, the trial judge appeared to be “merely explaining the presumption of innocence to [the] jurors.”
 
 Belcher,
 
 961 So.2d at 246. Further, the trial judge not only defined what the presumption of innocence means, but also reiterated that the State has the burden to establish the elements of the crime. Accordingly, the jury instruction does not “reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 See Garzon,
 
 980 So.2d at 1042 (quoting
 
 Delva,
 
 575 So.2d at 644-45). The jury instruction does not constitute fundamental error, and appellate counsel cannot be deemed ineffective for failing to challenge it on appeal.
 
 See Pagan,
 
 29 So.3d at 949 (citing
 
 Heath,
 
 3 So.3d at 1033). Accordingly, we deny relief on this claim.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the denial of the rule 3.850 motion by the postconviction court and deny relief on the petition for writ of habeas corpus.
 

 It is so ordered.
 

 
 *1120
 
 CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . The claims were as follows: (I) access to records and discovery violations; (II) production violations; (III) failure to produce trial file; (IV) ineffective assistance of counsel (DNA); (V) improper burden shifting through prosecutorial comments and jury instructions during the guilt phase; (VI) ineffective assistance of counsel (related to Timothy Cowart and mental retardation); (VII) improper jury instructions; (VIII) improper jury instructions; (IX) ineffective assistance of counsel (penalty phase); (X) improper weighing of mitigating and aggravating circumstances; (XI) ineffective assistance of counsel (mental health assistance); (XII) mental retardation; (XIII) challenge to Florida’s sentencing scheme; (XIV) improper suggestion of death penalty; (XV) improper burden shifting in penalty phase; (XVI) improper comments to jury; (XVII) challenge to murder in course of a felony aggravating factor instruction; (XVIII) failure to identify mitigating factors; (XIX) improper instruction on aggravating factors; (XX) challenge to method of execution; and (XXI) change in law requires new penalty phase proceeding.
 

 [2]
 

 .
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993).
 

 [3]
 

 .
 
 Frye v. United States,
 
 293 F. 1013 (D.C.Cir. 1923)
 

 [4]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla. 1971).
 

 [5]
 

 .
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 

 [6]
 

 .
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).