STATE of Minnesota, Respondent,

v.

Herman TANKSLEY, Jr., Appellant.

No. A10–0392.

Supreme Court of Minnesota.

Feb. 8, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Assistant City Attorney, Minneapolis, MN, for respondent.

William M. Ward, Chief Public Defender, Paul J. Maravigli, Assistant Public Defender, Office of the Hennepin County Public Defender, Minneapolis, MN, for appellant.

## OPINION

STRAS, Justice.

Appellant Herman Tanksley, Jr., was convicted of a single count of fourth-degree driving while impaired (DWI)—driving with an alcohol concentration of 0.08 or more, in violation of Minn.Stat. § 169A.20, subd. 1(5) (2010). Tanksley argues that he was entitled to a *Frye–Mack* hearing on the reliability of first-void urine testing to resolve his claim that first-void urine testing does not reliably correlate with a driver's blood alcohol concentration. Because blood alcohol concentration is irrelevant when the State seeks to prove the offense of driving with an alcohol concentration of 0.08 or more solely with evidence of the

amount of alcohol in the defendant's urine, we affirm Tanksley's conviction.

## I.

Minnesota state troopers responded to an automobile accident on Interstate 35W at 6:39 p.m. on June 26, 2009. At the scene, Tanksley admitted to the troopers that he was the driver of one of the vehicles involved in the accident. The troopers observed that Tanksley's pupils were restricted, his eyes were bloodshot and glossy, and he presented an odor of alcohol. Based on those observations, Tanksley's performance in field sobriety tests, and the results of a preliminary breath test, the troopers arrested Tanksley. Following the arrest, the troopers collected a urine sample from Tanksley at 8:21 p.m. The Bureau of Criminal Apprehension (BCA) tested Tanksley's sample and determined that it contained 0.13 grams of alcohol per 67 milliliters of urine.

The respondent, State of Minnesota, charged Tanksley with two counts of fourth-degree driving while impaired. In the first count, the State charged Tanksley with driving under the influence of alcohol, Minn.Stat. § 169A.20, subd. 1(1) (2010) (the "under-the-influence offense"). In the second count, the State charged Tanksley with driving with an alcohol concentration of 0.08 or more at the time, or as measured within 2 hours of the time, of driving, Minn.Stat. § 169A.20, subd. 1(5) (the "alcohol-concentration offense").

Prior to trial, Tanksley filed a motion to suppress his urine test results, arguing he was entitled to a *Frye–Mack* hearing[1] to determine the admissibility of first-void urine test results. Tanksley claimed that the BCA's testing of first-void urine samples is unreliable, inaccurate, and not generally accepted in the scientific community because it does not require an individual to empty his or her bladder, wait a certain period of time, and then provide a second sample for testing purposes. The problem with testing first-void urine samples, according to Tanksley, is that, because such samples contain urine that has "pooled" in an individual's bladder over time, alcohol concentration levels obtained from first-void urine tests may not correlate with an individual's blood alcohol concentration at the time of testing.[2]

The district court denied Tanksley's request for a *Frye–Mack* hearing. The court held that urine testing was not a novel scientific technique subject to a *Frye–Mack* hearing. The court further concluded that the correlation between first-void urine results and blood alcohol concentration is irrelevant to the alcohol-concentration offense. The court reasoned

---

1. A *Frye–Mack* hearing is a pretrial hearing regarding the admissibility of scientific evidence. *See State v. Roman Nose*, 649 N.W.2d 815, 819 (Minn.2002). Under *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and *State v. Mack*, 292 N.W.2d 764 (Minn.1980), we have adopted a two-pronged standard for determining the admissibility of such evidence. *Roman Nose*, 649 N.W.2d at 818. "First, a novel scientific technique that produces evidence to be admitted at trial must be shown to be generally accepted within the relevant scientific community, and second, the particular evidence derived from the technique and used in an individual case must have a foundation that is scientifically reliable." *Id.*

2. In his motion to suppress, Tanksley further argued that he was entitled to a *Frye–Mack* hearing because of the BCA's failure to test urine samples for the presence of glucose, which can, under certain circumstances, convert to alcohol and result in a higher overall alcohol concentration. The district court denied Tanksley's request for a *Frye–Mack* hearing, but ruled that Tanksley could present expert testimony on the relationship between glucose testing and urine alcohol concentration if Tanksley laid a proper foundation for the testimony at trial. We express no opinion about whether the district court's ruling on glucose testing was correct because Tanksley has failed to challenge that aspect of the district court's ruling before this court.

that, with respect to the alcohol-concentration offense, the State need only prove that Tanksley's alcohol concentration at the time of, or within 2 hours of, driving was "0.08 or more" under *any* of the three approved methods for testing alcohol concentration. Minn.Stat. § 169A.20, subd. 1(5). The State was not required to prove additionally that Tanksley's urine alcohol concentration correlated with his blood alcohol concentration, another of the approved methods for testing alcohol concentration.

Following the district court's ruling, Tanksley waived his right to a jury trial, and the parties agreed to a stipulated-facts trial before the district court on the alcohol-concentration offense. The court found Tanksley guilty of that offense and sentenced him to 45 days imprisonment, with credit for 2 days served and a stay of the remaining 43 days. The State dismissed the under-the-influence charge.

Relying on its decision in *State v. Edstrom*, 792 N.W.2d 105 (Minn.App.2010), the court of appeals concluded the district court abused its discretion in denying a *Frye–Mack* hearing to Tanksley. *State v. Tanksley*, No. A10–392, 2010 WL 5292291, at *2 (Minn.App. Dec. 28, 2010). The court held, however, that any error by the district court was harmless. *Id.* In so holding, the court relied on *Edstrom*, which approved the use of first-void urine testing as reliable and admissible based on the evidence presented at a full *Frye–Mack* hearing before the district court in that case. *Id.* The court concluded, therefore, that Tanksley could show no prejudice from having been denied a *Frye–Mack* hearing of his own. *Id.* We granted

Tanksley's petition for review on the question of whether it was reversible error for the district court to deny a *Frye–Mack* hearing on first-void urine testing.

## II.

■■■ The threshold question in this case is whether evidence regarding the correlation between the results of first-void urine testing and blood alcohol concentration is relevant to the alcohol-concentration offense—the only offense of conviction. Our case law describes relevancy as a "threshold" test for the admissibility of evidence. *Jacobson v. $55,900 in U.S. Currency*, 728 N.W.2d 510, 526 (Minn. 2007); *State v. Horning*, 535 N.W.2d 296, 298 (Minn.1995); Minn. R. Evid. 401 comm. cmt.—1977. Here, the district court expressly held that Tanksley's challenge to the reliability of first-void urine testing was irrelevant to the offense of conviction because the State did not need to prove that Tanksley's first-void urine test results accurately reported his *blood* alcohol concentration. If the district court was correct that Tanksley's challenge to first-void urine testing was irrelevant to the alcohol-concentration offense, then the district court did not err in denying a *Frye–Mack* hearing because there would be no relevant evidence for either party to present at such a hearing.[3]

■■■ The district court convicted Tanksley of the offense of driving, operating, or exercising physical control

of any motor vehicle ... within this state or on any boundary water of this state when:

...

---

3. At oral argument, Tanksley argued that, because the district court did not grant him a *Frye–Mack* hearing in which to explore and develop his challenge to first-void urine testing, we should not limit Tanksley to the arguments he raised before the district court. We disagree. It is well established that we will

not ordinarily consider matters that were not raised or presented to the district court, *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 584 n. 2 (Minn.2010), or in the petition for review, *State v. Koppi*, 798 N.W.2d 358, 366 (Minn. 2011).

(5) the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more. . . .

Minn.Stat. § 169A.20, subd. 1 (2010). The alcohol-concentration offense requires the State to prove two elements. First, the State must establish that the defendant drove, operated, or physically controlled a motor vehicle within the State of Minnesota. *Id.; Horning*, 535 N.W.2d at 298. Second, the State must prove that the defendant's alcohol concentration was 0.08 or more at the time, or within 2 hours of the time, the defendant drove, operated, or physically controlled the motor vehicle. Minn.Stat. § 169A.20, subd. 1(5); *see also Horning*, 535 N.W.2d at 298 (applying previous 0.10 alcohol concentration standard). Minnesota Statutes § 169A.03, subd. 2 (2010), in turn, defines "alcohol concentration" as: "(1) the number of grams of alcohol per 100 milliliters of blood; (2) the number of grams of alcohol per 210 liters of breath; or (3) the number of grams of alcohol per 67 milliliters of urine."

■■■ Whether first-void urine results correlate with blood alcohol concentration is not relevant to whether the State has proven the two elements of the alcohol-concentration offense. Section 169A.20, subdivision 1(5), requires proof of "alcohol concentration," but, under the statute, "alcohol concentration" can be proven by the number of grams of alcohol in 100 milliliters of blood, in 210 liters of breath, *or* in 67 milliliters of urine. Minn.Stat.

§ 169A.03, subd. 2. The statute thus provides three methods for proving the requisite alcohol concentration, and does not express a preference for one method over another. The presence or absence of a correlation between urine alcohol concentration using the first-void method and blood alcohol concentration does not make the existence of a 0.08 or higher alcohol concentration in Tanksley's urine any more or less probable. *See* Minn. R. Evid. 401; *State v. Steward*, 645 N.W.2d 115, 120 (Minn.2002) (stating that "[u]nder Minnesota Rule of Evidence 401, relevant evidence is anything that tends to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Put another way, even if we were to assume that the correlation between first-void urine test results and blood alcohol concentration is weak, as Tanksley argues, evidence of that fact would have no effect on the determination of whether the State proved beyond a reasonable doubt that Tanksley's *urine* alcohol concentration was at or above 0.08 grams per 67 milliliters of urine within 2 hours of driving, operating, or physically controlling a motor vehicle. Therefore, the district court was not required to hold a *Frye–Mack* hearing to decide the merit of Tanksley's criticism because a lack of correlation to blood alcohol concentration was not relevant to the alcohol-concentration offense.[4]

Our conclusion in this case is consistent with *State v. Horning*, 535 N.W.2d 296

---

**4.** In addressing the relevancy of Tanksley's challenge to first-void urine testing, we do not disturb the rule that the proponent of scientific evidence bears the burden of demonstrating foundational reliability. *See Goeb v. Tharaldson*, 615 N.W.2d 800, 814 (Minn.2000). But as the party seeking a *Frye–Mack* hearing on the admissibility of first-void urine results, Tanksley must provide some *relevant* reason for holding the hearing. A district court does

not have an obligation to hold a *Frye–Mack* hearing absent a relevant challenge to scientific evidence, just as it is not required to hold a *Frye–Mack* hearing sua sponte when the party opposing the admission of scientific evidence has failed to file a motion or state a proper objection. *See Schneider v. State*, 725 N.W.2d 516, 522 n. 3 (Minn.2007) (explaining that a district court's failure to sua sponte order a *Frye–Mack* hearing was not plain error be-

(Minn.1995). In that case, the district court prohibited the defendant from introducing evidence of his conduct to demonstrate lack of impairment at the time of a traffic accident. *Id.* at 297–98. We affirmed the district court's decision, holding that evidence regarding the defendant's level of impairment was not relevant to the crime of driving with an alcohol concentration of 0.10 or more. *Id.* at 296, 299. To convict a defendant of the alcohol-concentration offense at the time of the case, the State only had to prove "beyond a reasonable doubt ... two facts: that the defendant was operating a vehicle within this state and that at that time his/her alcohol concentration was .10 or more." *Id.* at 298. Although the evidence of impairment would help a fact-finder determine whether the defendant was guilty of driving under the influence of alcohol (a separately defined drunk-driving offense), the evidence did not logically or reasonably tend to prove or disprove appellant's alcohol concentration or tend to make such a fact more or less probable. *Id.* at 298–99. We therefore held that the defendant's lack of impairment was irrelevant to the alcohol-concentration offense. *Id.* at 299.

The correlation between first-void urine test results and blood alcohol concentration is equally irrelevant here. To hold otherwise would require us to add an element to the alcohol-concentration offense that is not present in subdivision 1(5) of section 169A.20: that urine alcohol concentration levels using the first-void method must correlate with blood alcohol concentration levels. *See Reiter v. Kiffmeyer,* 721 N.W.2d 908, 911 (Minn.2006) ("[W]e will not read into a statute a provision that the legislature has omitted, either purposely or inadvertently."). Under Tanksley's theory, the State would be required to prove, in effect, that an individual's blood alcohol concentration is at or above 0.08 for all alcohol-concentration offenses, even if the individual's urine alcohol concentration meets or exceeds 0.08. Yet, as stated above, in defining the alcohol-concentration offense, the Legislature set forth three methods for proving alcohol concentration without expressing a preference for one method over another.[5] Because the State is not required under the statute to prove a correlation between blood alcohol concentration and urine alcohol concentra-

cause the "the decision of trial counsel to forgo a *Frye–Mack* hearing was a permissible strategic and tactical decision"); *see also Taylor v. State,* 62 So.3d 1101, 1118 (Fla.2011) (stating that a trial court was not required to conduct a *Frye* hearing sua sponte); *People v. Kaurish,* 52 Cal.3d 648, 276 Cal.Rptr. 788, 802 P.2d 278, 298 (1990) (declining to require a trial court to raise *Frye* issues sua sponte).

5. Aside from the lack of textual support for Tanksley's argument, there is evidence the Legislature purposely moved away from exclusive reliance on blood alcohol concentration by creating three *independent* methods for proving alcohol concentration. Before 1978, the State was required to prove that a defendant's *blood* alcohol concentration exceeded 0.10 to obtain a conviction in an alcohol-concentration case. In 1978, however, the Legislature amended the law and replaced the requirement for proving *blood* alcohol

concentration with the provision requiring the State to prove a specific alcohol concentration in blood, breath, *or* urine. *See* Act of April 5, 1978, ch. 727 §§ 1–2, 1978 Minn. Laws. 788, 788–89 (codified at Minn.Stat. §§ 169.01, subd. 61, 169.121 (1978)) (enacting the current definition of "alcohol concentration" found in section 169A.03, subdivision 2, and changing the offense from driving when one's "blood contains 0.10 percent or more by weight of alcohol" to driving when one's "alcohol concentration is 0.10 or more"). Requiring the State to show a correlation between blood alcohol concentration and urine alcohol concentration would effectively nullify the 1978 statutory amendment. *See Frieler v. Carlson Marketing Grp., Inc.,* 751 N.W.2d 558, 566 (Minn.2008) (stating that "'[a]n amendment to a statute is normally presumed to change the law'") (quoting *CUNA Mut. Ins. Soc. v. Comm'r of Revenue,* 647 N.W.2d 533, 540 n. 16 (Minn.2002)).

tion to obtain a conviction on an alcohol-concentration charge, we will not impose such a requirement through the guise of demanding a *Frye–Mack* hearing on that question.

## III.

For the foregoing reasons, we conclude that the district court was not required to hold a *Frye–Mack* hearing based on Tanksley's challenge to the reliability of first-void urine testing.[6]

Affirmed.

---

**6.** Given our disposition of the issues in this case, we need not address the district court's alternative basis for denying a *Frye–Mack* hearing: that first-void urine testing is not a novel scientific technique. Nor do we address Tanksley's argument that a scientific technique is always novel, and that a party is therefore entitled to a *Frye–Mack* hearing on that technique, until it is reviewed and approved by this court.