# Supreme Court of Florida

_____

No. SC18-896
_____

**DAVID JAMES MARTIN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 6, 2021

PER CURIAM.

David James Martin challenges the denial of his second and third amended motions to vacate judgment and sentence, filed under Florida Rule of Criminal Procedure 3.851.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.  Among other things, we address the standard for evaluating postconviction claims of juror misconduct based on the juror's nondisclosure of information during voir dire.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, a grand jury indicted Martin on one count of first-degree murder and one count of armed robbery. *Martin v. State*, 107 So. 3d 281, 287 (Fla. 2012). Jury selection for Martin's trial began in November 2009. During voir dire, the prosecuting attorney asked the potential jurors about prior arrests, including prior arrests of the potential jurors' close friends or family members. Many of the potential jurors revealed prior arrests and convictions, including DUI convictions, in response to the prosecutor's questions, but juror Smith—one of the potential jurors who eventually served at trial—remained silent throughout the voir dire questioning. The prosecuting attorney then asked if any of the potential jurors, or any of their close friends or family members, had been victims of violent crime. Again, juror Smith remained silent. As we explain later, in actuality juror Smith as a minor had been adjudicated delinquent for sexual battery in 1985; he had a 1992 DUI conviction; and, in 1977 or 1978 (when juror Smith was 10 years old), his grandmother murdered his grandfather.

At trial, evidence was presented showing that on the day of the murder, the victim, Jacey McWilliams, told her mother and a

coworker that she was spending that evening with a friend named "David." *Id.* at 288. When Jacey's mother reported Jacey missing a few days later, the police began investigating. *Id.* at 287. Martin was arrested for shoplifting in Pinellas County, and officers confirmed that he had possession of Jacey's vehicle and had purchased food and tried to withdraw cash using Jacey's ATM card. *Id.* at 288-89.

In a recorded interview, officers questioned Martin about Jacey's whereabouts. *Id.* at 288. At first, Martin told the interrogating detectives that Jacey let him borrow her car, and that she was alive when he last saw her. *Id.* But Martin's story changed gradually over the course of the interview, and eventually he confessed to murdering Jacey. *Id.* He told the detectives that while he was out with Jacey on the night in question, he was also communicating via text with his girlfriend. *Id.* at 289. The girlfriend was upset about Martin being out with another woman. So, under pretense of getting a cigarette from Jacey's vehicle, Martin got a hammer, returned to Jacey, and bludgeoned her to death with it. *Id.* He said that he hid Jacey's body and then drove

her car to St. Petersburg to see his girlfriend, who described him as "giddy" when he arrived. *Id.*

The State presented Martin's videotaped confession at trial, plus police testimony about the evidence of guilt law enforcement obtained during the investigation. One of the State's witnesses testified that the police tracked Martin's cell phone and learned that on the night of the murder, Martin's cell phone communicated with cell phone towers located near the crime scene.

Against the advice of counsel, Martin testified on his own behalf. *Id.* at 290. He told the jury that the confession he gave during the police interview was false. *Id.* Martin testified that another individual—a drug-dealing acquaintance named Michael Gregg—was with Martin and Jacey on the night in question, and that it was Gregg who killed Jacey while Martin watched in horror. *Id.* Martin claimed that he lied to police because Gregg threatened to harm Martin's loved ones if he told anyone what happened. *Id.*

The jury found Martin guilty of first-degree murder and armed robbery, *id.* at 291, and the trial court sentenced Martin to death

and to thirty years in prison, respectively, *id.* at 292.[1]  We affirmed

Martin's convictions and sentences, *id.* at 325,[2] and his judgment

became final in June 2013 when the United States Supreme Court

denied review, *see Martin v. Florida*, 570 U.S. 908 (2013).

In June 2014, Martin filed a motion for postconviction relief

under Florida Rule of Criminal Procedure 3.851.[3]  Later that year,

---

1.  Facts about the underlying murder and the evidence presented at trial are described in detail in our opinion on direct appeal.  *Id.* at 287-90.  Facts relevant to the issues in this postconviction appeal will be discussed in the analysis below.

2.  Martin raised the following claims on direct appeal: (1) his confession was inadmissible because he had invoked his right to remain silent; (2) his confession was inadmissible because it was coerced; (3) the trial court erred in finding the existence of the "cold, calculated, and premeditated" aggravating circumstance; (4) the trial court erred in rejecting abuse and remorse as mitigating circumstances; (5) the trial court erred in refusing to consider a defense expert's testimony on aggravating and mitigating circumstances; (6) Florida's death penalty law is unconstitutional under the Sixth Amendment; and (7) Martin's death sentence was disproportionate.

3.  Martin alleged that: (1) the State failed to comply with the discovery requirements of Florida Rule of Criminal Procedure 3.852; (2) trial counsel was ineffective by failing to retain a confession expert for the suppression hearing and trial; (3) trial counsel was ineffective for failing to adequately litigate Martin's motion to suppress his confession; (4) trial counsel was ineffective by failing to adequately challenge the State's cell phone tracking evidence; (5) trial counsel was ineffective by failing to call witnesses at trial in support of Martin's version of events; (6) trial counsel provided

he filed an amended motion, adding a claim that trial counsel provided ineffective assistance by failing to ascertain that juror Smith concealed a DUI conviction during voir dire. In its answer to Martin's amended 3.851 motion, the State asserted that this ineffective assistance claim should be explored at an evidentiary hearing. In January 2017, Martin filed a second amended postconviction motion, adding a claim that his sentence was illegal under this Court's decision in *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). The postconviction court granted Martin a new penalty phase hearing but summarily denied his guilt phase claims.

Martin filed a motion for rehearing, and the postconviction court withdrew its previous order and entered a new order, granting an evidentiary hearing on Martin's ineffective assistance of counsel claim relating to juror Smith's concealment of information. Then, postconviction discovery documents produced by the State showed

---

ineffective penalty phase assistance by failing to obtain necessary experts, witnesses, and mental health records; (7) trial counsel was deficient in making inflammatory and prejudicial remarks about Martin during closing argument; (8) trial counsel was ineffective by failing to present relevant mitigating sentencing factors; (9) lethal injection violates the Eighth Amendment prohibition against cruel and unusual punishment; and (10) cumulative error.

that juror Smith had a juvenile delinquency adjudication for sexual battery—another fact Smith failed to disclose during voir dire. Based on this new information, the court granted Martin leave to interview juror Smith.

While deposing juror Smith, Martin's postconviction counsel asked Smith if he had omitted anything else during voir dire, and Smith admitted that when he was a child, his grandmother was convicted of murdering his grandfather. Based on the information obtained during the deposition, Martin filed a third amended rule 3.851 motion, incorporating the claims raised in his previous motion and adding a new ground for relief based on what Martin described as "newly discovered evidence." Specifically, Martin alleged that in addition to concealing a prior DUI conviction, juror Smith concealed a juvenile sexual battery adjudication and the fact that his grandfather had been murdered by Smith's grandmother. Martin argued that this newly discovered evidence of juror misconduct entitled him to postconviction relief.

At the evidentiary hearing on that claim, juror Smith testified that he had indeed failed to disclose his criminal history and grandfather's murder in response to relevant voir dire questions

asked by the prosecuting attorney. He further disclosed (for the first time) that his uncle had also been implicated in the murder of Smith's grandfather. Juror Smith insisted, however, that he never deliberately lied and that he did not remember hearing the relevant voir dire questions when they were asked. He also said he was not sure if he ever spent a night in jail for his crimes (the relevant question on voir dire had been about arrests for crimes "where someone had to go to jail at least overnight"). He further testified that the matters he failed to disclose were not on his mind during Martin's trial, and he swore he decided the case on the evidence. Martin's trial counsel testified at the evidentiary hearing that he likely would have attempted a cause challenge or used a peremptory strike if he had known of juror Smith's dishonesty at the time of trial. Trial counsel's testimony at the evidentiary hearing was unclear as to whether he would have attempted to strike juror Smith based on the underlying facts themselves, separate from Smith's dishonesty.

After the evidentiary hearing, the postconviction court entered a new order, again granting Martin a new penalty phase hearing (based on *Hurst* error) and again denying all of Martin's guilt phase

claims.  The court denied Martin's claim that trial counsel had failed to adequately question juror Smith or file a motion for new trial based on Smith's failure to disclose his DUI conviction, ruling that this ineffective assistance claim failed for lack of actual bias on the face of the trial record, citing *Carratelli v. State*, 961 So. 3d 312, 324 (Fla. 2007).  As to Martin's "newly discovered evidence" claim, the court applied the newly discovered evidence test articulated in *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998), and found that although Smith's juvenile adjudication and grandfather's murder could not have been discovered at the time of trial by the use of diligence, the evidence of Smith's juror misconduct was not of such a nature that it would probably produce an acquittal on retrial.

Martin now appeals the postconviction court's order, arguing that the court erred in denying his claim of newly discovered juror misconduct.[4]  Martin further argues that the court erred in summarily denying four of his guilt phase ineffective assistance of

---

4. At oral argument, Martin's postconviction counsel clarified that Martin was asserting a standalone juror misconduct claim, which was "newly discovered" in the sense that it could not have been discovered within a year of final judgment.

counsel claims,[5] and that the cumulative effect of all errors requires a new trial.  For the reasons set forth below, we affirm.

## ANALYSIS

### I.    Juror Smith's Concealment of Information During Voir Dire

It is well established that "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.  The failure to accord an accused a fair hearing violates even the minimal standards of due process."  *Irvin v. Dowd,* 366 U.S. 717, 722 (1961) (citing *In re Oliver*, 333 U.S. 257 (1948); *Tumey v. Ohio*, 273 U.S. 510 (1927)).  The right to an impartial jury trial is secured by the Sixth Amendment and by the Due Process Clause of the Fourteenth Amendment.  *Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992); *Turner v. Louisiana,* 379 U.S. 466, 471-72 (1965).  This Court has recognized that whenever a potential juror is affected by bias or prejudice against the defendant, "it cannot be said that he is fair-minded and impartial, and, if accepted as a

---

5.  Although Martin challenges the court's denial of certain ineffective assistance of counsel claims, he does not challenge, and has therefore abandoned, his claim that trial counsel was ineffective for failing to adequately question Juror Smith or to ascertain Smith's DUI conviction and file a motion for new trial.

juror, that he would be of that standard of impartiality which is necessary to prevent an impairment of the right to jury trial." *Johnson v. Reynolds*, 121 So. 793, 796 (Fla. 1929); *see also Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) ("The bias or prejudice of even a single juror would violate [defendant]'s right to a fair trial.").

The issue here is whether Martin has demonstrated that, in light of juror Smith's failure to disclose certain facts during voir dire, Martin was denied the right to be tried by an impartial jury. To recap, in his third amended rule 3.851 postconviction motion, Martin has alleged that when the prosecuting attorney asked the potential jurors if they (or any of their close friends or family members) had ever been arrested and spent a night in jail, juror Smith concealed a prior DUI conviction and a long-distant juvenile delinquency adjudication for sexual battery. Martin also has alleged that when the prosecutor asked the potential jurors if they (or any close friends or family members) had ever been victims of violent crime, juror smith concealed the fact that when he was a child, his grandfather was murdered by family members.

In the two previous iterations of his 3.851 motion, when postconviction counsel knew only of juror Smith's failure to disclose a DUI conviction, Martin alleged ineffective assistance of counsel—i.e., that trial counsel failed to discover Smith's nondisclosure in time to raise a cause challenge or exercise a peremptory strike, or at least in time to argue juror misconduct as a basis for a motion for new trial. *See* Fla. R. Crim. P. 3.600(b)(4) (providing that a trial court shall grant a new trial if substantial rights of the defendant were prejudiced because "any juror was guilty of misconduct"). But when Martin discovered through postconviction discovery that Smith also failed to disclose a juvenile delinquency adjudication and his grandfather's murder, Martin amended his 3.851 motion to add a new claim alleging that juror Smith's misconduct, *in and of itself*, provided a basis for postconviction relief. Martin does *not* allege in his third amended rule 3.851 motion that his trial counsel was ineffective for failing to learn of Smith's juvenile adjudication and family murder. In fact, Martin insists that his trial counsel reasonably relied on Smith's voir dire answers.

A.    Whether Martin's Claim is Procedurally Barred

- 12 -

At the threshold, the State argues that a standalone juror misconduct claim such as this one is procedurally barred because it could have been and should have been raised on direct appeal. The State relies on *Diaz v. State*, 132 So. 3d 93, 104-05 (Fla. 2013), where we held that a juror misconduct claim alleging concealment of information during voir dire was procedurally barred because defense counsel could have filed a motion to interview the juror shortly after the verdict and then raised the issue on direct appeal.

However, in *Diaz*, the undisclosed facts were the juror's history of domestic violence charges and arrests, a restraining order issued against the juror, and the fact that the juror worked as a domestic violence counselor. *Id.* at 104. These undisclosed facts were all easily discoverable by trial counsel with diligence, meaning the asserted misconduct could have been raised on direct appeal. *See id.* at 105. By contrast, here the postconviction court found, and the State concedes, that defense counsel could not have discovered Smith's juvenile adjudication or grandfather's murder absent voluntary disclosure from Smith himself or from the State. Because Martin could not have discovered the underlying facts about juror Smith with due diligence in time to argue this claim in

the direct appeal, we reject the State's argument that Martin's claim could have been raised on direct appeal and is therefore procedurally barred.[6]

The next question is whether Martin's claim is procedurally barred for another reason—that is, for being raised outside the one-year filing deadline for capital postconviction claims imposed by rule 3.851(d)(1). Because Martin first raised this claim more than a year after his judgment and sentence became final, we cannot consider the claim unless "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due

---

6. Some language in prior decisions of this Court suggests that standalone juror misconduct claims are barred unless raised on direct appeal. *See, e.g., Troy v. State*, 57 So. 3d 828, 838 (Fla. 2011); *Elledge v. State*, 911 So. 2d 57, 77 n.27 (Fla. 2005) ("[A]ny substantive claim pertaining to juror misconduct is procedurally barred as it could have and should have been raised on direct appeal."). It is true that juror misconduct claims that are discoverable with diligence during or immediately after trial are procedurally barred when raised in postconviction proceedings. But we have never held that a juror misconduct claim is procedurally barred even in circumstances where the claim could *not* have been discovered with due diligence prior to the direct appeal. Indeed, as recently as 2015, we reached the merits of a substantive juror misconduct claim brought in the postconviction context. *See Boyd v. State*, 200 So. 3d 685, 694 (Fla. 2015).

diligence." Fla. R. Crim. P. 3.851(d)(2)(A)[7]; *see also Byrd v. State*, 14 So. 3d 921, 924 (Fla. 2009) ("Claims of newly discovered evidence must be brought within a year of the date the evidence was or could have been discovered through due diligence."). The question whether Martin's *trial counsel* could have discovered Smith's juvenile adjudication and grandfather's murder and raised a claim on direct appeal is an entirely different question from whether Martin's *postconviction counsel* could have discovered this claim by the use of diligence within one year after the appellate mandate was entered and the United States Supreme Court denied certiorari review.

Here, the State has conceded that Smith's juvenile adjudication and grandfather's murder were not discoverable absent voluntary disclosure from Smith himself or from the State. Such voluntary disclosure occurred during postconviction

---

7. There are two other enumerated bases for an otherwise untimely rule 3.851 claim to be considered timely: if the fundamental constitutional right asserted was not established within the one-year window and has been held to apply retroactively, or if postconviction counsel, through neglect, failed to file the motion. Fla. R. Crim. P. 3.851(d)(2)(B)-(C). Neither exception applies here.

proceedings, and Martin filed this claim within a year of the disclosure. Therefore, we hold that Martin's claim falls within the exception to the one-year filing deadline set forth in rule 3.851(d)(2)(A).

B. The Standard for Evaluating Postconviction Juror Misconduct Claims

Having determined that Martin's claim is not procedurally barred, we will now assess whether Martin is entitled to postconviction relief on the merits. Because the parties disagree about the correct standard for evaluating Martin's juror misconduct claim, we begin by clarifying that standard, emphasizing at the outset the significance of the fact that Martin's claim arises in the postconviction context.

We most recently resolved the merits of a comparable postconviction juror misconduct claim in *Boyd v. State*, 200 So. 3d 685 (Fla. 2015). The defendant in *Boyd* sought relief on the basis that "two jurors failed to disclose information pertinent to his decision to retain them for jury service, thereby denying him a fair and impartial jury." *Id.* at 693-94. Boyd alleged that the jurors at issue in his case had concealed their status as felons and that the

seating of legally ineligible jurors "per se entitled" him to a new trial.

*Id.* at 697. We rejected Boyd's argument and held that, to establish

the requisite prejudice in the postconviction context, there must be

a showing, "based on legally sufficient evidence, of actual juror bias

against the defendant." *Id.* at 697. Subject to one clarification that

we will explain below, we adhere to our holding in *Boyd* and apply

*Boyd*'s actual bias standard to Martin's claim.

The predicate for a juror misconduct claim of this nature is

failure on the part of a juror "to answer honestly a material

question on voir dire." *McDonough Power Equip., Inc. v. Greenwood,*

464 U.S. 548, 556 (1984).[8] Thus, a mistaken but honest answer to

---

8. In *McDonough*, the Supreme Court addressed a juror misconduct claim and held that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. Although our analysis here is informed by *McDonough*, we disagree with the United States district court's decision in *Boyd v. Inch*, No. 16-62555-CIV-GAYLES, 2019 WL 3002922 (S.D. Fla. July 10, 2019), that *McDonough* is clearly established federal law for the postconviction context. First, *McDonough* is an ordinary civil case, not a postconviction case. Second, although federal courts routinely apply *McDonough* in the criminal and postconviction contexts, they have adopted materially different interpretations of *McDonough*'s prejudice test. *Compare United States v. Boney*, 977 F.2d 624, 635 (D.C. Cir. 1992) (remanding for evidentiary hearing to

a question—either because the juror mistakenly believed his answer was correct or because the question was unclear—will not warrant postconviction relief. *See id.* And a "material" question is one that has "a natural tendency to influence, or [is] capable of influencing," the determination of whether a juror is actually biased against the defendant. *Neder v. United States*, 527 U.S. 1, 16 (1999) (explaining materiality in the jury instruction context) (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)).

Proving a juror's dishonesty in response to a material question does not end the analysis, because the defendant additionally must establish that the dishonesty resulted in prejudice. More specifically, in postconviction proceedings, the challenger must establish that the juror's misconduct resulted in the defendant being denied his constitutional right to an impartial jury. And to make that showing, the challenger must prove "actual juror bias against the defendant." *Boyd*, 200 So. 3d at 697. This actual bias

---

determine whether juror's nondisclosure "resulted in actual bias to the appellants"), *with Sampson v. United States*, 724 F.3d 150, 166 (1st Cir. 2013) (test is whether the juror "has both the capacity and the will to decide the case solely on the evidence").

standard necessarily means that not all instances of juror concealment will entitle a postconviction challenger to a new trial. As the Supreme Court observed in *McDonough*, "[t]he motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. So, if the record shows that a juror withheld personal information for some reason other than to conceal a bias or prejudice—to avoid embarrassment, for example—a postconviction juror misconduct claim based on concealment of information during voir dire will fail.

"[A]ctual bias means bias-in-fact that would prevent service as an impartial juror." *Boyd*, 200 So. 3d at 698 (quoting *Carratelli*, 961 So. 3d at 324). Put differently, it is the challenger's burden to prove that the disputed juror "could not be fair and impartial and follow the law as instructed by the trial court." *Id.* at 696. Unless the defendant can prove that a juror who was actually biased against him sat on the jury, there is no basis for postconviction relief. That is because, absent such a showing, the defendant will not have established a denial of his right to an impartial jury.

There is, however, one aspect of our decision in *Boyd* that needs clarification. In *Boyd*, as in this case, we addressed a standalone juror misconduct claim—not a claim based on ineffective assistance of counsel. *Id.* at 693-94. Yet in *Boyd* we appeared to borrow from our decision in *Carratelli* (an ineffective assistance of counsel case) the principle that the evidence of a juror's actual bias "must be plain on the face of the record." *See id.* at 698 (quoting *Carratelli*, 961 So. 2d at 324). In cases governed by *Carratelli*, "the record" is the record of the voir dire conducted for jury selection. What we meant in *Boyd* by "the record" is unclear.

We now clarify that, in postconviction cases raising standalone juror misconduct claims like the one here, an evidentiary hearing will sometimes be needed to determine whether a juror was intentionally dishonest and, if so, whether the defendant can prove actual bias. It would not make sense in this context to apply the *Carratelli* rule of looking exclusively to the face of the voir dire record. A *Carratelli* claim requires the postconviction court to measure counsel's performance in light of what the attorney heard from potential jurors during voir dire. By contrast, a standalone juror misconduct claim is premised on a prospective juror's alleged

- 20 -

concealment of information during voir dire, despite counsel's reasonable efforts to elicit that information. As the Supreme Court recognized long ago, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982).

This is not to say that evidentiary hearings will be required to resolve every standalone juror misconduct claim. Undoubtedly there will be cases where the pre-hearing record before the postconviction court will conclusively refute the defendant's allegations of juror dishonesty and actual bias. We also note that in cases where a hearing is held, any questioning of the juror must be consistent with section 90.607(2)(b), Florida Statutes (2020), which provides: "Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment." *See Marshall v. State*, 854 So. 2d 1235, 1240 (Fla. 2003) ("A juror is not competent to testify about matters inhering in the verdict, such as jurors' emotions, mental processes, or mistaken beliefs."); *cf. Warger v. Shauers*, 574 U.S. 40, 44 (2014) (the federal rule generally

barring evidence of statements made during jury deliberations applies to inquiries into whether a juror lied during voir dire).

Against this backdrop, it should be clear why we disagree with Martin's argument that his claim is governed by the standard set forth in *De La Rosa v. Zequeira*, 659 So. 2d 239 (Fla. 1995). *De La Rosa* was not a postconviction case; it was a traditional civil case in which this Court evaluated a juror misconduct claim on review following a direct appeal to a district court of appeal. In that specific context, the Court approved a three-part test for evaluating "whether a juror's nondisclosure of information during voir dire warrants a new trial." *Id.* at 241. "First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence." *Id.*

We disagree with Martin's argument that our case law requires application of *De La Rosa* in these circumstances. As we have explained, *Boyd* is the most recent postconviction case in which we resolved a comparable juror misconduct claim on the merits. And

in *Boyd,* we applied an actual bias standard, not the *De La Rosa* standard. Our decision in *Boyd* is not in conflict with any of our decisions before or since.[9]

Even if we were writing on a blank slate, we would conclude that the *De La Rosa* standard is far too lenient for the postconviction context. By design, the *De La Rosa* test is intended to vindicate a litigant's right to make informed challenges against potential jurors—either for cause or peremptorily. Under our case law, a trial court must grant a cause challenge if there is any reasonable doubt that the juror possessed the state of mind that would have enabled the juror to render an impartial verdict. *Cozzie v. State,* 225 So. 3d 717, 727 (Fla. 2017). That generous, prophylactic standard excludes many potential jurors whose

---

9. In *Braddy v. State,* 219 So. 3d 803, 825 (Fla. 2017), which Martin relies on extensively for his argument that this Court applies *De La Rosa* in these circumstances, we did discuss the *De La Rosa* test in dicta when discussing the complainant's lack of diligence. Ultimately, though, we held that Braddy's claim was procedurally barred because it could have been raised on direct appeal. *Id.* Similarly, we have discussed *De La Rosa* when reviewing ineffective assistance of counsel claims alleging failure to raise a juror misconduct claim in a motion for new trial. *See, e.g., Johnston v. State,* 63 So. 3d 730, 739 (Fla. 2011). But as we have explained, Martin's juror misconduct claim is not based on ineffective assistance of counsel.

presence would not have violated the defendant's constitutional right to an impartial trial if they had served on the jury. This is even more true with regard to peremptory challenges, which can be exercised on any basis (subject to prohibitions on invidious discrimination) and which do not implicate any rights of constitutional dimension. *See United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000). The *De La Rosa* test vindicates interests broader than those appropriate for the postconviction context, in which the question is whether presumptively valid final judgments must be overturned on account of underlying constitutional violations.

Finally, we conclude this discussion by explaining why it would be incorrect to evaluate Martin's juror misconduct claim under the *Jones* test for standalone newly discovered evidence claims. As we have noted, in response to Martin labeling his claim as one based on "newly discovered evidence," the postconviction court evaluated (and rejected) the claim under the *Jones* framework. Though the postconviction court ultimately reached the right result, it got there for the wrong reasons.

In *Jones* itself, the postconviction claimant maintained that he was innocent of the crime of conviction, and he alleged that newly discovered evidence proved his innocence and established the true killer's identity. 709 So. 2d at 521. This Court held that "in order to be considered newly discovered, the evidence 'must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence.' " *Id.* (alteration in original) (quoting *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994). Turning to prejudice, we held that "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Id.* We added that trial courts must " 'consider all newly discovered evidence which would be admissible' at trial and then evaluate the 'weight of both the newly discovered evidence and the evidence which was introduced at the trial.' " *Id.* (quoting *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991)). Hence the familiar three-part inquiry that Florida courts have since used to determine the merits of standalone newly discovered evidence claims.

Martin's claim is not a standalone newly discovered evidence claim. Such claims—*Jones* claims—are premised on an allegation that the jury did not hear previously unavailable evidence material to guilt or innocence, and that the introduction of such evidence probably would have led to the defendant's acquittal. *See id.* at 514 (observing that "Jones alleged that newly discovered evidence *established his innocence*") (emphasis added). By contrast, the juror misconduct claim in this case has nothing to do with evidence about Martin's factual guilt or innocence. Instead, Martin's claim is that juror misconduct resulted in a denial of Martin's right to an impartial jury.

When a defendant raises a standalone juror misconduct claim like Martin's in postconviction proceedings, there will always be threshold questions about the timeliness of such a claim, because the defendant will have to demonstrate that he could not have raised the claim on direct appeal. In that sense, postconviction standalone juror misconduct claims will always be predicated on evidence that is asserted to have been previously unavailable. But once the defendant has established that his juror misconduct claim is timely, the postconviction court's consideration of the claim on

- 26 -

the merits must be governed by the standards we have articulated here—standards designed to vindicate the defendant's right to an impartial jury—not by the standards set out in *Jones*.

C. Evaluating Martin's Juror Misconduct Claim Under the Actual Bias Standard

The order denying Martin's juror misconduct claim contains factual findings that allow us to evaluate the merits of that claim. The postconviction court found that Martin "failed to demonstrate that juror Smith was actually biased against [him], could not be fair and impartial, and could not follow the law as instructed." The postconviction court also found that juror Smith's testimony at the hearing was credible and that Smith did not intentionally withhold the information during trial due to bias or prejudice.

Competent and substantial evidence supports the postconviction court's findings; in fact, no evidence introduced at the evidentiary hearing shows that Smith's failure of disclosure was motivated by partiality or a bias-in-fact against Martin, as required to establish that Martin was deprived of his constitutionally protected right to an impartial jury. Juror Smith admitted at the evidentiary hearing that he failed to disclose his criminal history

and his grandfather's murder in response to relevant voir dire questions, but Smith also swore that his prior criminal history was not on his mind and did not impact in any way his ability to give Martin a fair trial. Smith further swore that his grandfather's murder did not have any impact on his decision to vote to convict Martin. This was consistent with his deposition testimony, where juror Smith said that his prior incidents were "[a]ll behind me, man. 25, 30 years ago."

Smith also testified that he did not think he ever spent an entire night in jail—which was how the prosecutor framed the question about prior criminal activity. And the postconviction court attached portions of the record where juror Smith said he did not remember *hearing* the voir dire questions. Thus, although the postconviction court incorrectly analyzed Martin's claim under the framework of *Jones*, competent and substantial evidence presented at the evidentiary hearing supports the postconviction court's finding that there was no actual bias. Accordingly, Martin's juror misconduct claim was properly denied. *Cf. Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) (recognizing that an appellate court may affirm a trial court that reaches the right result for the wrong

reason, as long as there is any basis that would support the judgment in the record).

## II. Summarily Denied Ineffective Assistance Claims

Next, Martin argues that the postconviction court erred in summarily denying four guilt phase ineffective assistance of counsel claims. "To be entitled to an evidentiary hearing on a claim of ineffective assistance, the defendant must allege specific facts that are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." *Anderson v. State*, 220 So. 3d 1133, 1142 (Fla. 2017) (quoting *Rhodes v. State*, 986 So. 2d 501, 513-14 (Fla. 2008)). To establish prejudice, the defendant's allegations must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A court's decision to grant or deny an evidentiary hearing on a rule 3.851 motion is subject to de novo review. *Cannon v. State*, 45 Fla. L. Weekly 568, 569, 2020 WL 717823, at *2 (Fla. Feb. 13, 2020) (quoting *Salazar v. State*, 188 So. 3d 799, 808 (Fla. 2016)).

Martin argues that he was entitled to an evidentiary hearing on the following four ineffective assistance of counsel claims: (1) counsel failed to retain and call a false confession expert at the suppression hearing and at trial; (2) counsel failed to call witnesses at the suppression hearing to testify about Martin's vulnerability to coercion; (3) counsel failed to challenge trial testimony about the police tracking Martin's cell phone; and (4) counsel failed to investigate and call witnesses at trial to corroborate Martin's story. We affirm the postconviction court's summary denial of relief as to all four claims.

A.      Failure to Call Witnesses to Challenge Martin's Confession

We begin with Martin's assertions of ineffectiveness regarding counsel's efforts to exclude Martin's confession.  It is undisputed that trial counsel moved to suppress Martin's confession and then argued at the suppression hearing that Martin's confession was the result of psychological coercion and "undue influence on a 20-year-old individual who ha[d] never been interrogated before up to that point."  Likewise, the record supports the postconviction court's finding that "[c]ounsel questioned Detective West about Defendant's mental state, his age, and sleep deprivation."  The transcript of the

suppression hearing also shows that during cross-examination, counsel did not merely inquire about coercive techniques and quid pro quo promises but also about the interrogating officers' knowledge: (1) that Martin was tired from being on the road for days, (2) that Martin was just a "kid" (the detectives' own words); (3) that Martin requested mental health services during the interview; and (4) that Martin expressed a desire to go to rehab for recent drug use.

Nonetheless, Martin alleges that his counsel's performance at the suppression hearing was deficient because counsel did not present testimony from a false confession expert, a psychologist, a toxicologist, and various lay witnesses familiar with Martin's mental and emotional fragility. Relying on this Court's observation on direct appeal that the interrogating officers' techniques represented the outer limit of permissible tactics, *see Martin*, 107 So. 3d at 298, Martin alleges that his confession probably would have been excluded if counsel had called these witnesses at the suppression hearing.

Although we did note in our opinion on direct appeal that "some of the tactics and techniques used by the detectives may

have been less than ideal," we conducted a lengthy examination of the interrogating officers' actions and statements, and we ultimately held that the interview "[could not] be characterized as so coercive as to render Martin's confession involuntary." *Id.* at 316. Because the issue of whether the police conduct rendered Martin's confession involuntary was already argued on direct appeal, Martin is not permitted to relitigate that issue now. *See Walker v. State,* 88 So. 3d 128, 137 (Fla. 2012). He is instead limited to arguing that his counsel failed to give the court a complete picture of the totality of the circumstances and that he was prejudiced by that purported deficiency. *See Rose v. State,* 985 So. 2d 500, 504 (Fla. 2008) ("[T]he rule prohibiting the actual relitigation of issues is not so expansive that it procedurally bars a claim of ineffective assistance of counsel in a postconviction motion where counsel's failure to act, or not act, is precisely the deficiency that may have prevented a proper review of the issue on direct appeal.").

We hold that summary denial of this claim was proper because even if these witnesses testified in the manner alleged, the unpresented testimony does not show that counsel so failed to supply the trial court with the circumstances of the confession that

Martin was deprived of his right to counsel. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1022 n.14 (Fla. 1999) ("[T]he legal standard is reasonably effective counsel, not perfect or error-free counsel.").

At the suppression hearing, Martin's counsel questioned Detective West about the interrogating officers' knowledge at the time of the interview that Martin was only twenty years old, had mental health and drug issues, and was tired during the interview. Even if Martin's proposed lay witnesses would testify that Martin did in fact use drugs, did have mental health issues, and had in fact been operating on little sleep, such testimony does not present any novel aspect of the circumstances of the confession that counsel did not already bring to the trial court's attention. And the trial court did not need testimony from a confessionologist to conclude that young people with mental health problems and little experience with interrogations might have a harder time withstanding high-pressure police tactics, or that lack of sleep and drug use might further weaken one's willpower. We therefore hold that Martin's allegations fail to show that counsel was so deficient

in his efforts to suppress the confession that the performance fell below the wide range of permissibility.

We also agree with the postconviction court that Martin's allegations of prejudice are conclusory. To be entitled to an evidentiary hearing, Martin must demonstrate, through his allegations, that but for counsel's failure to call these witnesses at the suppression hearing, there is a reasonable probability that the result of Martin's trial would have been different. The trial court heard argument from counsel about the detectives exerting psychological pressure on a vulnerable individual yet ruled that the confession was not coerced and found that Martin "voluntarily talked throughout the entire transcript I have before me." Martin's allegation that the court would have made different findings or rulings had counsel called witnesses to support those arguments is speculative and conclusory. Because Martin has not shown a reasonable probability that the trial court would have suppressed Martin's confession, our confidence in the outcome of Martin's trial is not undermined.

Martin also asserts that, notwithstanding the legal admissibility of the confession, counsel was ineffective for failing to

call a confession expert at trial, arguing that such testimony would have persuaded the jury to disregard Martin's introduced confession. *See* Fla. Std. Jury Instr. (Criminal) 3.9(b) (providing that if the jurors conclude that a defendant's out-of-court statement was not freely and voluntarily made, they should disregard the statement). The postconviction court denied this claim as well, ruling that the proposed expert testimony was not likely to have changed the outcome of trial, given the evidence of guilt that was introduced in addition to the confession. *See Simmons v. State*, 105 So. 3d 475, 493 (Fla. 2012) (testimony from a confession expert would not have significantly diminished the incriminating effect of the other evidence).

We agree with the postconviction court that Martin has not shown a reasonable probability that the result of the trial would have been different had a confession expert testified in the manner alleged. Martin himself took the stand at trial and testified "that he falsely confessed to the crime because his dealer, the actual murderer, had threatened to hurt his (Martin's) mother and girlfriend if he told anyone what had happened." *Martin*, 107 So. 3d at 290. Therefore, the jurors already had a basis to disregard

Martin's confession if they believed it to be false. And it is highly improbable that the jurors would have concluded that Martin's confession was not freely given to the police, considering Martin himself informed them that he made a conscious and deliberate decision to lie to the detectives for reasons unrelated to the circumstances of the interrogation. Because Martin's allegations, taken as entirely true, do not demonstrate that Martin was prejudiced by the absence of the purported testimony, we affirm the postconviction court's summary denial of this claim.

B.  Failure to Challenge the State's Cell Phone Tracking Evidence

Martin next argues that he was entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to challenge or rebut testimony about the tracking of Martin's cell phone. The postconviction court ruled that Martin's counsel had no basis to challenge this admissible evidence and that the outcome of the trial would not likely be any different if counsel had more effectively rebutted the State's evidence. We agree.

Martin insists that *United States v. Evans*, 892 F. Supp. 2d 949, 953 (N.D. Ill. 2012)) and a trio of articles[10] show that the cell phone tracking evidence introduced at Martin's trial was tenuous and unreliable. But neither the articles nor that single federal case out of the Northern District of Illinois were binding on the trial court. *See Taylor v. State*, 62 So. 3d 1101, 1111 (Fla. 2011) (holding that an alleged failure by counsel to cite "academic articles and isolated, nonbinding decisions . . . cannot be considered 'outside the broad range of reasonably competent performance under prevailing professional standards' ") (quoting *Pagan v. State*, 29 So. 3d 938, 948 (Fla. 2009)). And even if those sources had been persuasive to some extent, they were all published in 2010 or later and therefore did not exist when counsel was preparing for Martin's 2009 trial. Just as trial counsel cannot be ineffective for failing to anticipate a change in the law, counsel cannot be ineffective for failing to use nonexistent sources to rebut evidence.

---

10. Mark Hanson, *Prosecutors' Use of Mobile Phone Tracking to Spot a Defendant is 'Junk Science,' Critics Say*, A.B.A.J., June 2013, at 15; Aaron Blank, *The Limitations and Admissibility of Using Historical Cellular Site Data to Track the Location of a Cellular Phone*, 18 Rich. J.L. & Tech. 1. (2011); Ced Kurtz, *Cell Towers: Ugly But Useful*, Pittsburg Post-Gazette, July 4, 2010, at 20.

As to prejudice, although Martin testified that it was a drug-dealing acquaintance who killed Jacey while Martin looked on in horror, Martin admitted on the stand that he was present during Jacey's murder and that he traveled south by car afterward, just as the cell phone tracking evidence indicated. Because Martin's own testimony established that he was at the crime scene, there is no reasonable probability that a challenge to the accuracy of cell tower signals would have resulted in a different outcome of the trial. As Martin has not shown deficiency or prejudice, we affirm the summary denial of relief as to this claim.

C.     Failure to Present Evidence to Corroborate Martin's Trial Testimony

Martin also argues that he was entitled to an evidentiary hearing on his claim that counsel failed to call Michael Gregg, Tracy Ray, and Cliff Putnam at trial. Martin alleges that Gregg would have admitted to living near the cemetery where the police recovered Jacey's body and to being a registered sex offender who engaged in sex acts with Martin in the past. Martin alleges that Putnam would have testified that Gregg dealt drugs, owned firearms, and lived in a camp of sex offenders. Martin alleges that

Ray (Martin's mother) would have testified that Gregg visited her pawnshop and asked how Martin's case was going.

A postconviction claimant can only show ineffective assistance of counsel for failure to call witnesses at trial if he demonstrates how the testimony would cast doubt on his guilt and how the omission of the testimony prejudiced the outcome of his trial. *Ford v. State*, 825 So. 2d 358, 360-61 (Fla. 2002). Martin has failed to allege testimony that would challenge any evidence of guilt presented at trial. Even assuming these witnesses would testify exactly as alleged in Martin's motion, and that every word of their testimony would be admissible, the alleged testimony only indicates that Martin was acquainted with a generally unsavory individual who lived a few miles from where Jacey's body was recovered, and that this same individual saw Martin's mother in a public place and asked how her son's case was going. Nothing about that evidence inculpates another party for Jacey's murder or indicates that Martin could not have committed the crime if the testimony were true.

Martin alleges that these witnesses would have "corroborated aspects" of his trial testimony, but even if so, the proposed

testimony would only have corroborated aspects that have little or no connection with the charged offenses. For example, Martin alleges that Putnam would have testified that Gregg owned firearms, and such testimony would indeed have corroborated Martin's statement that Gregg had a gun. But Jacey was killed with a *hammer*, and the State presented no ballistic evidence that would be cast into doubt by Putnam's testimony. Likewise, even if all three witnesses could testify that Gregg was a sex offender, the State presented no evidence suggesting that Jacey was killed by a sex offender or that her murder had any sexual component whatsoever. Because the proposed testimony would neither exculpate Martin nor inculpate any other party, Martin has not demonstrated that counsel was deficient for failing to call these witnesses or that there is a reasonable probability that the result of the trial would have been different but for counsel's purported error. *See Simmons*, 105 So. 3d at 490. We therefore affirm the postconviction court's summary denial of relief.

### III. Cumulative Error

In light of our conclusion that Martin's factual allegations, taken as true, would not demonstrate error on the part of trial

counsel, Martin's cumulative error claim necessarily fails. *Pham v. State*, 177 So. 3d 955, 962 (Fla. 2015).

## CONCLUSION

Having considered all claims in this appeal, we affirm the trial court's denial of Martin's guilt phase postconviction claims.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result.

I concur in the result reached by the majority because the actual bias standard articulated in *Boyd*[11] is controlling in this case.

Given the common occurrence of jurors inadvertently—or in some instances intentionally—failing to disclose important information about themselves during the critical stage of voir dire, I write to address the absence of a standard jury instruction in

---

11. *Boyd v. State*, 200 So. 3d 685 (Fla. 2015).

criminal cases that explains to potential jurors the importance of providing candid, honest answers during voir dire. I note that such an instruction is provided in the Standard Jury Instructions in Civil Cases.

I recommend that judges give a preliminary instruction consistent with the following, borrowed from the civil standard jury instructions:

> Purpose of Questioning: The questions that you will be asked during this process are not intended to embarrass you or unnecessarily pry into your personal affairs, but it is important that the parties and their attorneys know enough about you to make this important decision. If a question is asked that you would prefer not to answer in front of the whole courtroom, just let me know and you can come up here and give your answer just in front of the attorneys and me. If you have a question of either the attorneys or me, don't hesitate to let me know.

> Response to Questioning: There are no right or wrong answers to the questions that will be asked of you. The only thing that I ask is that you answer the questions as frankly and as honestly and as completely as you can. You [will take] [have taken] an oath to answer all questions truthfully and completely and you must do so. Remaining silent when you have information you should disclose is a violation of that oath as well. If a juror violates this oath, it not only may result in having to try the case all over again but also can result in civil and criminal penalties against a juror personally. So, again, it is very important that you be as honest and complete with your answers as you possibly can. If you don't understand the question, please raise your hand and ask

for an explanation or clarification.  In sum, this is a process to assist the parties and their attorneys to select a fair and impartial jury.  All of the questions they ask you are for this purpose. If, for any reason, you do not think you can be a fair and impartial juror, you must tell us.

Fla. Std. Jur. Instr. (Civ.) 201.3.

This instruction emphasizes not only the importance of answering voir dire questions "frankly, honestly, and completely," but also the potential consequences of failing to do so.  *Id.* Moreover, it reassures prospective jurors who may be concerned about bringing sensitive matters to the court's attention in such a public space.

An Appeal from the Circuit Court in and for Clay County, John H. Skinner, Judge – 102008CF000658000AMX

Rick A. Sichta of The Sichta Firm, LLC, Jacksonville, Florida,

for Appellant

Ashley Moody, Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

for Appellee